UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**DONNESHIA JORDAN,**   CASE NO.

    **Plaintiff,**

v.

**ROBERT L. WILKIE in his official capacity
as SECRETARY, VETERANS AFFAIRS,**

    **Defendant.**
_____/

# COMPLAINT

Plaintiff, DONNESHIA JORDAN, hereby sues Defendant, ROBERT L. WILKIE in his official capacity as SECRETARY, VETERANS AFFAIRS, and alleges:

## JURISDICTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981a. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, DONNESHIA JORDAN, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class because of her race (black) and because she reported unlawful employment practices and has been retaliated against thereafter.

4. At all times pertinent hereto, Defendant, ROBERT L. WILKIE in his official capacity as SECRETARY, VETERANS AFFAIRS, (hereinafter "VA" or Defendant) has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff has filed a complaint with the Equal Employment Opportunity Commission and has received a Final Agency Decision. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a black female, began her employment with Defendant on June 23, 2019 and, at all times pertinent to this action, has worked as a Certified Nursing Assistant (CNA) at Defendant's VA Medical Center in Lake City, Florida.

She held that position until Defendant unlawfully terminated her on November 19, 2019.

7. Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, held to a different standard because of her race (black) and has been retaliated against after reporting this discrimination.

8. The disparate treatment and retaliation came at the hands of specifically, but not limited to, Assistant Nurse Manager (ANM) Beverly Romine, Nurse Manager (NM) Rachel Eddings, Chief Nurse (CN) Zahira Sanabria, Charge Nurse Krystal Jeror, and Registered Nurse (RN) Margaret Swinson, all of whom are white.

9. Plaintiff was treated differently or held to a different standard than similarly situated white coworkers including but not limited to Probationary CNA Carri Parrish and Probationary CNA Carol Mendibles both of whom are white. Defendant treated CNAs Parrish and Mendibles more favorably than Plaintiff regarding leave requests, job assignments, and discipline or lack thereof.

10. Plaintiff contends that there is a pattern of racially discriminatory behavior at Defendant's facility where white employees are permitted to gang up on and mistreat black employees without being punished.

11. Charge Nurse Jeror would frequently demand Plaintiff complete tasks in an aggressive tone which she did not use with white nurses, whom she politely asked to complete tasks.

12. NM Eddings and ANM Romine would frequently ignore Plaintiff's e-mails but respond to other white nurses' e-mails in a timely manner, even when sent after Plaintiff's e-mails. On one occasion, Plaintiff e-mailed ANM Romine requesting permission to use her paid time off to leave early for her daughter's parent teacher conference. After not receiving a response for three days, Plaintiff called ANM Romine who verbally denied the request, when Plaintiff asked for an explanation, the denial was reiterated.

13. Plaintiff was not permitted to use her available leave or attend her daughter's parent teacher night. However, Defendant went into the system after the fact, approved the request in the system, and charged Plaintiff for paid time off that she did not use. Plaintiff immediately requested the discrepancy be corrected but Defendant did not get back to her for a week.

14. By contrast, when CNA Mendibles was late to work and asked to use her sick leave to cover her tardiness, Defendant not only timely approved the request, but changed the type of leave to annual leave so Mendibles would not lose any paid time off.

15. Defendant would also single out black nurses, including Plaintiff and forbid them from doing things that white nurses were allowed to do.

16. For example, Defendant has specific runs (sets of patients each nurse is assigned to) and white nurses were allowed to rotate runs, so they did not get tired of doing the same patients over and over. Despite Defendant's policy of allowing these rotations, Defendant would frequently schedule Plaintiff to be on the same run continuously. In fact, when Plaintiff questioned why she was not allowed to rotate like her white counterparts, Charge Nurse Jeror lied and told Plaintiff that Defendant had a policy that all nurses were assigned to continuous runs.

17. This was patently false as white nurses including but not limited to Tracy Black, Carri Parrish and Carol Mendibles were permitted to rotate runs. On one occasion when Black was in charge of the nursing schedule and scheduled to work with Plaintiff, she purposely rotated Plaintiff off of the run and replaced her with a white nurse. Ironically, the white nurse could not handle the workload and Black had to request Plaintiff to assist them in completing their run on top of handling her own patients.

18. Defendant was supposed to abide by its float book, which listed who was supposed to be scheduled as a floater and when. However, Defendant would often ignore the float book and schedule Plaintiff to be a floater more often than white nurses. When Plaintiff asked about the discrepancy, Defendant would make

excuses for why she was required to be a floater more than others, most commonly that the scheduled person had seniority over Plaintiff, but even those with seniority were required to be floaters.

19. Charge Nurse Jeror would also go into Plaintiff's patients' rooms after her, looking for something to use to get Plaintiff in trouble. For example, Plaintiff was assigned to a patient who required check-ups every thirty minutes, and after Plaintiff finished her check, Jeror went into the room and tried to claim Plaintiff was not thorough with her check because after Plaintiff had left the room, the patient changed the position of his bed which Jeror said was too high.

20. Plaintiff was belittled, picked on, and spoken down to on a regular basis by her supervisor, RN Swinson. Plaintiff was initially scared to formally report the behavior because she was still new and feared retaliation before her probationary period ended but did tell RN Swinson that she felt uncomfortable with the treatment.

21. Beginning in September of 2019, the mistreatment became too much to bear and Plaintiff began to report it to NM Eddings and ANM Romine.

22. On September 4 and 5, 2019, Plaintiff sent NM Eddings and ANM Romine e-mails regarding requests to accommodate her new nursing school schedule which were ignored. However, when white employee Starlet l/n/u requested rescheduling for school, it was granted immediately. This is just one

example of many where Defendant would give preferential treatment to white employees.

23. For example, on September 11, 2019, Plaintiff was put on a floater schedule despite it not being her turn, it was white CNA Parrish's turn. Defendant had done this to Plaintiff on several occasions since she started, usually claiming that the reason was because the other nurse who was not scheduled as a floater had seniority over Plaintiff.

24. However, Parris did not have seniority and Defendant manufactured an excuse as to why Plaintiff had to take on more responsibilities than her white counterparts. It became clear that Defendant had no intentions of treating Plaintiff equally to its white employees.

25. That same day, RN Swinson, whom Plaintiff had complained to about the floater mishap, came down to Plaintiff's floor, invaded Plaintiff's personal space, stood over her, and looked down on her threateningly. Plaintiff felt too intimidated to question Swinson about her aggressive demeanor.

26. On September 29, 2019, Plaintiff sent an e-mail to NM Eddings reporting being mistreated in the workplace. Plaintiff specifically reported Defendant's unequal assignment of job duties between Plaintiff and other white CNAs including CNA Parrish, particularly as it related to overseeing a patient known to be difficult. Plaintiff would be assigned to him for multiple rotations when

7

white CNAs were given a break from him. Plaintiff also reported that when she tried to report the unequal assignments to Charge Nurse Krystal Jeror, she was met with hostility.

27.     Plaintiff also reported being belittled, and talked to like she was nobody.  Defendant did nothing to address her concerns.

28.     In fact, NM Eddings chastised Plaintiff for not reporting anything earlier and to discourage her from further reporting or following up on her complaint, assigned Plaintiff a training on how to deal with difficult patients instead of addressing the discriminatory behavior.

29.     On October 20, 2019, Plaintiff requested annual leave for October 27, 2019 and November 3, 2019. ANM Romine denied Plaintiff's request on October 24, 2019 without reason.

30.     Plaintiff also requested to use her sick leave or in the alternative, leave without pay, for the dates if annual leave was not approved, which Defendant also denied.

31.     Despite denying all of Plaintiff's requests, Defendant approved CNA Mendibles request which was made around the same time as Plaintiff's. At the time, Plaintiff had worked for Defendant longer than Mendibles and had seniority over her. By Defendant's logic, Plaintiff's request should have been granted first.

32. On October 29, 2019 Plaintiff became incredibly sick and began throwing up at work. She had to leave early to go to the hospital where she was prescribed medication. She tried to call NM Eddings who initially refused to answer Plaintiff's calls. Plaintiff was only able to get through as Eddings was leaving the office. Plaintiff requested leave without pay for October 30, 2019, which Defendant denied. Eddings told Plaintiff that she had no sick leave left and therefore she would be marked absent without leave. Defendant has allowed leave without pay for Plaintiff's white co-workers but refused to do so for her, even knowing how sick she was.

33. On October 30, 2019, Plaintiff contacted Defendant's EEO office to file a complaint against Defendant.

34. Plaintiff also reported to CNA Alice Pirtle, who is a union official for AFGE Local 1976, that she was having issues with Defendant's racially motivated treatment and notified Pirtle that she (Plaintiff) had filed an EEOC complaint.

35. On November 13, 2019, Defendant changed Plaintiff's schedule to an earlier start time than normal without notice. Defendant knew that the schedule change conflicted with Plaintiff's nursing school schedule and on information and belief made the change with the goal of setting Plaintiff up for disciplinary action. When Plaintiff arrived for her regularly scheduled shift, Defendant falsely accused her of calling out of work, which Plaintiff did not do.

36. Plaintiff complained about Defendant's failure to notify her of the schedule change, the purposeful change of her schedule to conflict with her nursing school schedule, and the fact that Defendant did not treat its white employees the same way it was treating Plaintiff.

37. On November 19, 2019, Defendant unlawfully terminated Plaintiff on pretextual grounds which Defendant manufactured because of her race and/or because she reported racial discrimination in the workplace that Defendant.

38. Defendant did not even have the decency to terminate plaintiff in person, rather Defendant sent Plaintiff a letter via Fed-Ex notifying her that she was going to be terminated claiming because of her absences without leave. This reason was pretextual as Defendant refused to work with Plaintiff regarding her nursing school schedule like it did for white employees.

39. Defendant wanted to terminate Plaintiff because of her race and/or because she reported racial discrimination in the workplace. After she reported the race discrimination, Defendant actively targeted Plaintiff and artificially increased her absence without leave hours by changing her schedule out from under her and scheduling her at times Defendant knew Plaintiff was unavailable in order to create a record for her termination.

40. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RACE DISCRIMINATION

41. Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42. This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981a. This is a disparate treatment claim only.

43. Plaintiff has been the victim of discrimination on the basis of her race in that she was treated differently than similarly situated white employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of her race.

44. Defendant is liable for the differential treatment of Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

45. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

46. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

47. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

48. The events set forth herein led, at least in part, to Plaintiff's termination.

49. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §1981a and 42 U.S.C. §2000e et seq..

50. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief.

## COUNT II
## <u>RETALIATION</u>

51. Paragraphs 1 through 40 are re-alleged incorporated herein by reference.

52. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

53. Defendant is an employer as that term is used under the applicable statutes referenced above.

54. The foregoing unlawful actions by Defendant were purposeful.

55. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

56. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

57. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

58. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss

of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

    (a)    that process issue and this Court take jurisdiction over this case;

    (b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

    (c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

    (d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

  (e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

  (f) award Plaintiff interest where appropriate; and

  (g) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

        Respectfully submitted,

        /s/ Marie A. Mattox
        Marie A. Mattox [FBN 0739685]
        MARIE A. MATTOX, P.A.
        203 North Gadsden Street
        Tallahassee, FL 32301
        Telephone: (850) 383-4800
        Facsimile: (850) 383-4801

        ATTORNEYS FOR PLAINTIFF